United States District Court
Southern District of Texas
**ENTERED**
January 09, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | Criminal Case No. 2:21-CR-00589 |
| | § | |
| **KRISTIAN GARCIA** | § | |

## MEMORANDUM OPINION AND ORDER

Corpus Christi police officers arrested Kristian Garcia on a state-law felon-in-possession charge on January 9, 2021. He was out on bond two days later. While on bond, Garcia stabbed a woman to death. He was then seen on video kicking down his ex-girlfriend's door and carrying her one-year-old child out of the house while the ex-girlfriend followed him, screaming. Officers found Garcia with the child and the ex-girlfriend on June 10, 2021, and arrested him on state-law charges of murder and kidnapping that same day. Thirteen days later, on June 23, the United States indicted Garcia on federal felon-in-possession charges related to the January 9 arrest. The Government took Garcia into federal custody on these charges three years later, just a few days after his state-court cases concluded.

Garcia now wants the federal indictment dismissed. Garcia claims that (1) the six-month delay between his arrest in January 2021 and his indictment in June 2021 violates the Speedy Trial Act and (2) the three-year delay between his indictment on federal charges and his arrest for those charges violates his Sixth Amendment right to a speedy trial.

The Government counters that (1) Garcia's arrest on state-law charges did not trigger the Speedy Trial Act deadline and (2) there was a good reason for the three-year delay. That is, Garcia was in state custody awaiting trial on serious felony offenses, including allegedly kidnapping a would-be witness in the federal case. So, the Government chose to wait until the conclusion of these state cases before acting on the federal charges.

Before the Court is Garcia's Motion to Dismiss Indictment and for Discovery. (Dkt. No. 16). For the reasons below, the Court **DENIES in part** this Motion.

## I.     BACKGROUND

On January 9, 2021, two Corpus Christi police officers responded to reports of a man seen bleeding on his front porch, evidently the victim of an assault. (Dkt. No. 17-2 at 4). The victim said that two men had pointed guns in his face, pistol whipped him, and taken his phone. (*Id.*). One of them carried a 9mm with an extended clip; the other, a .45. (*Id.*).

Around 10:00 p.m. that same day, different Corpus Christi police officers stopped a car for driving without headlights. (Dkt. No. 17-3 at 4). Inside was Defendant Kristian Garcia and his then-girlfriend, Jezabel Zamora. (*Id.*); (*see* Dkt. No. 17-6 at 4). As she exited the vehicle, Zamora tried to grab a small bag from the car, (Dkt. No. 17-3 at 4), but an officer noticed the furtive motion and checked the bag for weapons. (*Id.*). He found a gun: a 9mm with an extended clip. (*Id.* at 6). It had dried blood on it. (*Id.*). Zamora told officers that upon seeing police lights in his rearview, Garcia had given her the gun to hide in the bag. (*Id.* at 4, 6). She said the gun belonged to him. (*Id.* at 4).

A search of the Nueces County District Clerk's website revealed that Garcia was convicted of aggravated assault with a deadly weapon—a felony—in 2015. (*Id.*). So the officers arrested Garcia on state-law charges of unlawful carry of a weapon by a felon. (*Id.* at 1, 4). Officers took Garcia to the Nueces County jail, (Dkt. No. 17-4 at 1), and booked the gun into evidence, (Dkt. No. 17-3 at 3–4). Garcia posted bond two days later. (Dkt. No. 17-4 at 2).

On May 21, 2021, while out on bond, Garcia stabbed a woman to death. (Dkt. No. 17-5 at 5–9); (Dkt. No. 17-9 at 1–2). Two weeks after the murder, on June 8, 2021, a Ring doorbell captured Garcia kicking down the door of the house where Zamora was staying with her one-year-old daughter. (Dkt. No. 17-6 at 4–6). Garcia is seen running out the door with the child; Zamora follows, screaming. (*Id.* at 4). SWAT officers found Garcia in an apartment with Zamora and her child two days later. (*Id.* at 6–7). They arrested Garcia on state-law charges of aggravated robbery, murder, and kidnapping. (*Id.*); (Dkt. No. 17-7).

Meanwhile, on May 24, 2021, federal prosecutors received Garcia's case file from the ATF to review for potential felon-in-possession charges. (Dkt. No. 17 at 2). The prosecutor assigned to the case reviewed the file on June 8, 2021—a date that stands out to her because it was the same day she saw Garcia's face on the news in connection with the alleged kidnapping.[1] (*Id.*). The Government indicted Garcia on federal felon-in-

---

[1] The disposition of the kidnapping charges is unclear from the record.

possession charges on June 23, 2021, while he was in state custody for the murder and kidnapping charges. (*See* Dkt. No. 1).

Garcia remained in state custody while his state cases proceeded. (Dkt. No. 16 at 1). A Nueces County grand jury indicted Garcia on aggravated-robbery charges on August 25, 2021, (Dkt. No. 17-8 at 1–3), and on charges of murder, burglary of a habitation, and kidnapping on September 2, 2021, (Dkt. No. 17-9 at 1–3); (Dkt. No. 17-10 at 1–3). After a delay of almost three years, Garcia's jury trial on the burglary-of-a-habitation charge started on May 14, 2024. (Dkt. No. 17-10 at 1, 14). The jury convicted him three days later. (*Id.* at 1–2, 14). Garcia pled no contest to the murder charge the same day. (Dkt. No. 17-9 at 1–2, 15). Three days later, on May 20, 2021, the Government issued a writ of habeas corpus to bring Garcia into federal custody to appear for prosecution. (Dkt. No. 8). Garcia's federal arrest warrant was issued and executed the next day. (Dkt. No. 14).

Garcia now moves to dismiss the federal indictment. (Dkt. No. 16). He first claims that the six-month delay between his arrest on state-law felon-in-possession charges in January 2021 and his indictment on federal felon-in-possession charges in June 2021 violates the Speedy Trial Act. (*Id.* at 1–3). Second, he claims that the three-year delay between his 2021 indictment on federal charges and his 2024 arrest on those charges violates his Sixth Amendment right to a speedy trial. (*Id.* at 3–4).

The Government disagrees. (*See generally* Dkt. No. 17). The Government contends that Garcia's arrest by state officials on state charges did not trigger the federal Speedy

4

Trial Act, (*id.* at 8–14), and the concurrent state proceedings were a valid reason to delay prosecution of the federal charges, (*id.*).

## II.   LEGAL STANDARD

A criminal defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits," including allegations of "preindictment delay" or "a violation of the constitutional right to a speedy trial." Fed. R. Crim. P. 12. Defendants have the burden of proving preindictment delay under the Speedy Trial Act. 18 U.S.C. § 3162(a)(2). The burden of proving prejudice from a violation of the Sixth Amendment speedy-trial right also generally "rests on the defendant." *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003). In some cases, though, prejudice is presumed, and the defendant "will receive relief unless the government shows that the presumption is extenuated . . . or rebuts the presumption with evidence." *Id.* at 231 (citing *Doggett v. United States*, 505 U.S. 647, 658, 112 S.Ct. 2686, 2694, 120 L.Ed.2d 520 (1992)).

## III.  DISCUSSION

Garcia makes two claims: First, the six-month delay between his arrest in January and his indictment in June violated Section 3161(b) of the Speedy Trial Act. (Dkt. No. 16 at 1–3). Second, the "long pretrial detention" violated his Sixth Amendment right to a speedy trial. (*Id.* at 3–4). Both fail.

### A.   SPEEDY TRIAL ACT VIOLATION

First, the Speedy Trial Act. Garcia claims that the Government violated Section 3161(b) of the Speedy Trial Act by not indicting him within thirty days of his

5

January 10, 2021, arrest. (*Id.* at 1–3). Garcia concedes that "on its face, the Speedy Trial Act does not start that [thirty-day] clock upon a state arrest." (*Id.* at 2). But he claims that his arrest by state officials was a "ruse" to hold him on federal charges without an indictment. (*Id.* at 1–3). The Court disagrees.

### 1. Section 3161(b) and the "ruse" exception

Section 3161(b) of the Speedy Trial Act requires the Government to file an "indictment charging an individual with the commission of an offense" within thirty days "from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b).

"The Speedy Trial Act does not begin to run when the defendant is arrested by state authorities on state charges . . . ." *United States v. Taylor*, 814 F.2d 172, 174 (5th Cir. 1987). Rather, an "individual is not arrested under 3161(b) until he is taken into custody after a federal arrest for the purpose of responding to a federal charge." *United States v. Johnson*, 815 F.2d 309, 312 (5th Cir. 1987) (collecting cases). Thus, "[a]n arrest made by a state officer, even if state and federal officials are cooperating at the time, does not start the running of the 30–day time period." *Taylor*, 814 F.2d at 175.

In *United States v. De La Pena-Juarez*, however, the Fifth Circuit adopted the "ruse exception" to prevent "'federal criminal authorities [from] collud[ing] with civil or state officials to have those authorities detain a defendant pending federal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act.'" 214 F.3d 594, 598 (5th Cir. 2000) (quoting *United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir. 1993)). So

6

the Speedy Trial Act may be triggered by state detentions that are "'mere ruses'" to hold a defendant for federal prosecution. *Id.* (quoting *Cepeda-Luna*, 989 F.2d at 357).

This exception applies only "where the defendant demonstrates that the primary or exclusive purpose of the [nonfederal] detention was to hold him for future criminal prosecution" on federal charges. *Id.* "'[I]f the detaining authorities have a lawful basis for their [nonfederal] detention, a defendant is not entitled to invoke the exception.'" *United States v. Kelley*, 40 F.4th 276, 283 (5th Cir. 2022) (quoting *United States v. Pasillas-Castanon*, 525 F.3d 994, 998 (10th Cir. 2008)). To that end, the ruse exception "requires the defendant to prove bad faith." *Id.* at 283 n.12 (citing *Pasillas-Castanon*, 525 F.3d at 998 n.1).

### 2.     **Garcia has not satisfied the ruse exception**

Garcia has not proved—or even satisfactorily alleged—the bad-faith showing required to satisfy the ruse exception. Garcia merely alleges that he was "arrested by the state for murder with the firearm he is accused of unlawfully possessing" and that "[h]is federal charges stem from the same conduct: felon in possession of a firearm on the date of the alleged murder." (Dkt. No. 16 at 2–3).

That is factually incorrect. Garcia was arrested under state law for possessing a firearm on January 9, 2021, at which time the gun was taken into evidence by law enforcement. (Dkt. No. 17-3 at 3–4, 6); (Dkt. No. 17-2 at 8). Then, more than four months later, Garcia stabbed a woman to death. (Dkt. No. 17-5 at 5–9); (Dkt. No. 17-9 at 1–2). The federal indictment is unrelated to the murder. (*See* Dkt. No. 1). The record shows that state officials didn't examine the firearm evidence from Garcia's initial arrest for unlawful possession until the end of February 2021, (*see* Dkt. No. 17-3 at 15), and the Government

7

alleges that it didn't receive Garcia's case file until May 2021, (Dkt. No. 17 at 2). This evidence belies Garcia's claim that his two-day detention in January 2021 was a "ruse" to hold him on federal charges without an indictment.

In sum, the state-law charges against Garcia gave state officials a lawful basis to hold him in custody. *See Kelley*, 40 F.4th at 283–84. And Garcia has offered no evidence that his detention by the state was a ruse to hold him on federal charges.

Moreover, even if Garcia's June 2021 arrest for murder and kidnapping were a "ruse," it would not present a Speedy Trial Act violation. State officers arrested Garcia on June 10, 2021. (Dkt. No. 17-6 at 6–7); (Dkt. No. 17-7). The Government indicted him on federal felon-in-possession charges on June 23, 2021, (*see* Dkt. No. 1), within Section 3161(b)'s thirty-day window. Garcia has not met his burden of proving that his Speedy Trial Act rights were violated.

### B. THE SIXTH AMENDMENT

Next, the Sixth Amendment. Garcia argues—briefly—that the "long pretrial detention" abridged his Sixth Amendment right to a speedy trial. (Dkt. No. 16 at 3–4). The Government responds that there was a good reason for the delay: Garcia was in state custody awaiting trial on several state-law offenses, including the alleged kidnapping of a would-be witness in the federal case—Garcia's ex-girlfriend, Jezabel Zamora. (Dkt. No. 17 at 2–3, 12); (Dkt. No. 17-3 at 1–2, 4, 6, 8, 16); (Dkt. No. 17-6 at 1, 3–5, 7).

#### 1. The Sixth Amendment standard

The Sixth Amendment provides that "the accused shall enjoy the right to a speedy and public trial" in all criminal prosecutions. U.S. Const. amend. VI. An accused's Sixth

Amendment protections commence when an indictment is filed. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971).

"[T]he right to speedy trial is a more vague concept than other procedural rights." *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972). In fact, it is "impossible to determine with precision when the right has been denied." *Id.* Accordingly, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Id.* at 522, 92 S.Ct. at 2188.

This functional analysis is "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530, 92 S.Ct. at 2191–92. The relevant factors are (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* The four factors "have no talismanic qualities," and none is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533, 92 S.Ct. at 2193.

Courts balance the factors by "weigh[ing] the first three *Barker* factors . . . against any prejudice suffered by the defendant due to the delay in prosecution. Obviously, in this balancing, the less prejudice a defendant experiences, the less likely it is that a denial of a speedy trial right will be found." *Serna-Villarreal*, 352 F.3d at 230 (internal citations omitted). When more than one year has passed between indictment and trial, courts in the Fifth Circuit "undertake[] a full *Barker* analysis, looking to the first three factors to decide whether prejudice will be presumed." *United States v. Parker*, 505 F.3d 323, 328 (5th Cir. 2007) (internal citations omitted).

**2. The *Barker* analysis**

a. Length of delay

"*Barker*'s first factor, length of delay, functions as a triggering mechanism." *United States v. Duran-Gomez*, 984 F.3d 366, 374 (5th Cir. 2020) (citing *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192). Courts in the Fifth Circuit only "examine the remaining three factors if the trial has been delayed for at least one year." *Id.* Here, a full *Barker* analysis is required because more than three years have passed since Garcia's indictment. (*See* Dkt. No. 1) (indictment dated June 23, 2021).

The Fifth Circuit has also held that delays of "more than double the minimum necessary to trigger the *Barker* analysis" weigh heavily in the defendant's favor. *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008). The three-year delay here is more than double the one-year delay required to trigger the *Barker* analysis, so the length-of-delay factor weighs heavily in Garcia's favor.

b. Reason for the delay

When considering the reason for the delay, courts ask "whether the government or the criminal defendant is more to blame for th[e] delay." *Doggett*, 505 U.S. at 651, 112 S.Ct. at 2690 (citing *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192). Not all reasons for delay carry equal weight. *Goodrum*, 547 F.3d at 258 (citing *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192). "At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the [government]." *Id.* "At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the [government]." *Id.*

As the reason for the delay, the Government explains that "[a]t the time [Garcia] was indicted federally, he was in the custody of Nueces County for 5 serious felony offenses, several of which carried a possible term of imprisonment of life." (Dkt. No. 17 at 12). "Additionally," the Government continues, "a material witness in the instant federal case," Jezabel Zamora, "was [allegedly] the victim of Garcia's state crimes." (*Id.*). Accordingly, the Government "felt it prudent to have those cases resolved prior to having Garcia brought to answer for his federal charge, where if he requested a trial, she would have to testify." (*Id.*).

The Court agrees that these are valid reasons for the delay and that, as a result, this factor favors the Government. Though the Fifth Circuit has not addressed the issue, the Fourth, Sixth, and Eighth Circuits have held that concurrent state proceedings are almost always a valid reason to delay federal prosecution.[2] "By contrast, the Tenth Circuit and Seventh Circuit have adopted an ad hoc approach to evaluating delays caused by concurrent state proceedings." *United States v. Myers*, 930 F.3d 1113, 1121 (9th Cir. 2019).[3] The Ninth Circuit adopted the ad hoc approach in *Myers*. *See id.* Only the Third Circuit has seemingly rejected concurrent state proceedings as a valid reason for delay. *See United States v. Battis*, 589 F.3d 673, 680 (3d Cir. 2009).

The Court agrees with the majority of circuits holding that concurrent state proceedings may be a valid reason for delay. But the Court need not decide whether that

---

[2]  *See United States v. Thomas*, 55 F.3d 144, 150–51 (4th Cir. 1995); *United States v. Schreane*, 331 F.3d 548, 555 (6th Cir. 2003); *United States v. Brown*, 325 F.3d 1032, 1035 (8th Cir. 2003).

[3]  *See United States v. Seltzer*, 595 F.3d 1170, 1177–78 (10th Cir. 2010); *United States v. Ellis*, 622 F.3d 784, 791 (7th Cir. 2010).

is always true or only sometimes true. Here, given the potential threat to Zamora, the Government had a good reason to wait for the state proceedings to resolve. (*See* Dkt. No. 17 at 12). And the Government acted quickly once the state proceedings concluded, issuing a writ of habeas corpus for Garcia to appear for federal prosecution three days after the state proceedings finished. (*See* Dkt. No. 17-10 at 2, 15–16); (Dkt. No. 17–9 at 2, 15); (Dkt. No. 8). Even under an ad hoc, context-specific approach, the Court is satisfied that the Government had a valid reason for the delay. Accordingly, the reason-for-delay factor favors the Government.

        c.      <u>Assertion of the right</u>

The Supreme Court noted in *Barker* that "[t]he more serious the deprivation, the more likely a defendant is to complain." 407 U.S. at 531, 92 S.Ct. at 2192. Hence, whether a defendant has asserted (or failed to assert) his speedy-trial right "is entitled to strong evidentiary weight" in a court's analysis. *Id.* at 531–32, 92 S.Ct. at 2192–93. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2182.

An assertion of the right to a speedy trial is a "demand for a speedy trial." *United States v. Frye*, 489 F.3d 201, 211 (5th Cir. 2007). This will "generally be an objection to a continuance or a motion asking to go to trial." *Id.* "At the very least," a defendant "should manifest 'his desire to be tried promptly.'" *Id.* at 211–12 (quoting *United States v. Litton Sys., Inc.*, 722 F.2d 264, 271 (5th Cir. 1984)). If a defendant waits too long to assert his right, his "silence will be weighed against him." *Parker*, 505 F.3d at 329–30.

Garcia does not prove or even allege that he asserted his right to a speedy trial. (*See* Dkt. No. 16 at 3). The only document in the record that could even potentially qualify is a March 18, 2024, letter that Garcia wrote to the Court inquiring about the case. (*See* Dkt. No. 6). But as the Fifth Circuit recently explained, communications showing an "informal awareness of the right to a speedy trial" do not meet the burden. *See Duran-Gomez*, 984 F.3d at 378. And only a charitable reading of Garcia's letter would show that the letter rises to even that kind of informal awareness. In any case, as in *Duran-Gomez*, Garcia's letter "is not within the same ballpark as 'an objection to a continuance or a motion asking to go to trial.'" *Id.* (quoting *Frye*, 489 F.3d at 211). Therefore, this factor favors the Government.

          d.      <u>Prejudice</u>

Finally, prejudice. This factor requires courts first to determine which party has the burden of showing prejudice. If the first three *Barker* factors weigh heavily in a defendant's favor, courts may presume prejudice. *See United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009). If not, "the defendant 'must demonstrate actual prejudice.'" *Id.* (quoting *Parker*, 505 F.3d at 328). In some cases, courts may presume prejudice based on the length of delay alone. *See Goodrum*, 547 F.3d at 260–61. But "delays of less than five years are not enough, by duration alone, to presume prejudice." *Parker*, 505 F.3d at 328–29. In *Goodrum*, the Fifth Circuit declined to presume prejudice when "only two of the three factors" were "weighted heavily" in the defendant's favor. *Goodrum*, 547 F.3d at 260. Here, only one of the factors—length of delay—weighs heavily in Garcia's favor. So Garcia must show actual prejudice. *Parker*, 505 F.3d at 328.

13

"[V]ague and conclusory allegations" about witnesses' memories or the defendant's anxiety do not show actual prejudice. *Goodrum*, 547 F.3d at 262 (citing *United States v. Hayes*, 40 F.3d 362, 366 (11th Cir. 1994)). Vague and conclusory allegations are all that Garcia offers in the single paragraph of his motion discussing prejudice. (*See* Dkt. No. 16 at 3). Garcia thus has not shown actual prejudice.

\* \* \*

After weighing the *Barker* factors, the Court concludes that Garcia has not established that the Government violated his Sixth Amendment right to a speedy trial.

## IV.   DISCOVERY REQUEST

Garcia also requests discovery into the reason for the delay and any relevant communications between state and federal officials. (*Id.* at 4). The Government responds that "all communications with the Nueces County District Attorney's Office were over the telephone and therefore, no written communications exist to be turned over in discovery." (Dkt. No. 17 at 14).

Rule 16 of the Federal Rules of Criminal Procedure provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph" items "if the item is within the government's possession, custody, or control" and "the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Thus, the Court orders the Government to permit inspection of any items that are responsive to Garcia's request and relevant to his speedy-trial defense— including the "ruse" exception.

## V.　CONCLUSION

For the reasons above, the Court **DENIES** Garcia's Motion to Dismiss Indictment and for Discovery as to his request to dismiss the indictment. (Dkt. No. 16). If any discovery exists responsive to Garcia's request and relevant to his speedy-trial defense, the Government is **ORDERED** to allow him to inspect the items.

It is SO ORDERED.

Signed on January 9, 2025.

　　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　　**DREW B. TIPTON**
　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**